UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI

**F I L E D**

Mar 25 2024

**ARTHUR JOHNSTON, CLERK**



J. Bryan Quesenberry
2750 SW Coast Ave.
Lincoln City, OR 97367
801-473-9951
jbq.esq@gmail.com
*Plaintiff/Relator*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| UNITED STATES OF AMERICA, <u>ex</u> <u>rel.</u> J. BRYAN QUESENBERRY, <br><br> Plaintiff/Relator, <br><br> vs. <br><br> HINDS COUNTY MENTAL HEALTH COMMISSION; REGIONAL XIII COMMISSION FOR MENTAL HEALTH a/k/a REGION XIII COMMISSION FOR MENTAL HEALTH AND MENTAL RETARDATION and d/b/a GULF COAST MENTAL HEALTH CENTER; SINGING RIVER MENTAL HEALTH/MENTAL RETARDATION SERVICES; SOUTHWEST MISSISSIPPI MENTAL HEALTH AND RETARDATION COMMISSION—REGION 11 d/b/a SOUTHWEST MISSISSIPPI MENTAL HEALTH COMPLEX; and WARREN YAZOO BEHAVIORAL HEALTH, INC., n/k/a RIVER RIDGE BEHAVIORAL HEALTH, <br><br> Defendants. | **COMPLAINT FOR VIOLATION OF FEDERAL FALSE CLAIMS ACT** <br><br> **(Filed in camera and under seal)** <br> **(DO NOT PLACE ON PACER)** <br><br> JURY TRIAL DEMANDED <br><br> Civil Action No. 3:24-cv-167-KHJ-MTP |

Plaintiff-Relator J. Bryan Quesenberry, a licensed attorney acting *pro se* on behalf of the United States of America (the **"Government"** or the **"Federal Government"**) and against each Defendant, alleges, based upon personal knowledge, relevant documents, information, and belief, as follows.

## INTRODUCTION

1.      This is an action to recover damages and civil penalties on behalf of the United States of America arising from false and/or fraudulent records, statements, and claims made and caused to be made by each Defendant and/or its agents and employees, in violation of the federal False Claims Act, 31 U.S.C. §§ 3729, *et seq.* (**"FCA"**).

2.      This action seeks to recover more than $9 million wrongfully loaned to Defendants through the Federal Government's Payroll Protection Program (**"PPP"**). The PPP provided a pathway to borrowers to receive forgiveness of these loans.

3.      Each Defendant is a government-owned and -controlled entity, as detailed below.

4.      As such, each Defendant was not entitled to PPP funds. *See,* 13 CFR 120.110(j) ("government-owned entities" are ineligible to receive SBA loans).

5.      Rather, as a government-owned and -controlled entity, each Defendant was eligible for Covid relief funds through programs other than the PPP, including, for example, the American Rescue Plan Act and the State and Local Fiscal Recovery Funds program.

6.      Nevertheless, each Defendant represented in its PPP application that it was eligible for a PPP loan.

7.      Because Defendants obtained (and were forgiven of) more than $9 million in PPP funds, despite being ineligible, other eligible small businesses were denied the opportunity to borrow and use that PPP money.

## HISTORY OF THE FALSE CLAIMS ACT

8.      Pursuant to the PPP, the Federal Government spent hundreds of billions of dollars in stimulus funding, as well as other federal funding, to support and aid small businesses through the coronavirus pandemic.

9.     The FCA was enacted during the Civil War, and was substantially amended in 1986, and again in 2009 and 2010. Congress amended the FCA in 1986 to enhance the Federal Government's ability to recover losses sustained as a result of fraud against the United States after finding that fraud in federal programs was pervasive and that the FCA, which Congress characterized as a primary tool for combating government fraud, was in need of modernization. The amendments create incentives for individuals to come forward with information about fraud against the Federal Government without fear of reprisals or inaction, and enable the use of private legal resources to prosecute fraud claims on the Federal Government's behalf.

10.     The FCA prohibits, *inter alia*: (1) knowingly presenting, or causing to be presented, a false or fraudulent claim for payment or approval; and (2) knowingly making or using, or causing to be made or used, a false or fraudulent record or statement material to a false or fraudulent claim. 31 U.S.C. §§ 3729(a)(1)(A), (B). Anyone who violates the FCA is liable for a civil penalty for each such claim, plus three times the amount of the damages sustained by the Government. 31 U.S.C. § 3729(a)(1)(A) (as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 [28 U.S.C. § 2461 note; Public Law 104-410]).

11.     In 2009, Congress amended the FCA to clarify that a "claim" includes "any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property that (i) is presented to an officer, employee, or agent of the United States; or (ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest..." 31 U.S.C. § 3729(b)(2).

12.     The FCA allows any person having information about an FCA violation to bring an action for himself and the Federal Government, and to share in any recovery. The FCA requires that the complaint be filed under seal for a minimum of 60 days (without service on

3

Defendant during that time) to allow the Federal Government time to conduct its own investigation and to determine whether to join the suit.

13. Based on the foregoing laws, *qui tam* Plaintiff/Relator seeks through this action to recover all available damages, civil penalties, and other relief for the violations alleged herein in every jurisdiction to which each Defendant's misconduct has extended.

## PARTIES

14. Plaintiff/Relator J. Bryan Quesenberry ("**Relator**") is a resident of Oregon. He is an attorney licensed to practice law in Utah and Oregon and brings this action on behalf of the United States of America, the real party in interest.

15. Defendant Hinds County Mental Health Commission ("**Hinds County Commission**") is a government entity in Hinds County, Mississippi.

16. Defendant Region XIII Commission for Mental Health a/k/a Region XIII Commission for Mental Health and Mental Retardation and d/b/a Gulf Coast Mental Health Center ("**Region XIII Commission**")[1], is a government entity in Hinds County, Mississippi.

17. Defendant Singing River Mental Health/Mental Retardation Services ("**Singing River Services**") is a government entity in Jackson County, Mississippi.

18. Defendant Southwest Mississippi Mental Health and Retardation Commission—Region 11, d/b/a Southwest Mississippi Mental Health Complex ("**Southwest Mississippi Commission**")[2] is a government entity in Pike County, Mississippi.

---

[1] Despite the a/k/a and d/b/a, the name of the borrower on the PPP loan application for this defendant is "Region XIII Commission for Mental Health."

[2] The name of the borrower on the PPP loan application for this defendant is "Southwest Mississippi Mental Health Complex."

19.     Defendant Warren Yazoo Behavioral Health Inc. n/k/a River Ridge Behavioral Health ("**Warren Yazoo**")[3] is a government entity in Warren County, Mississippi.

**JURISDICTION AND VENUE**

20.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 31 U.S.C. § 3732, the latter of which specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. §§ 3729 and 3730. Although this issue is no longer jurisdictional after the 2009 amendments to the FCA, upon information and belief there has been no statutorily relevant public disclosure of the "allegations or transactions" in this Complaint, as those concepts are used in 31 U.S.C. § 3730(e), as amended by Pub. L. No. 111-148, § 10104(j)(2), 124 Stat. 119, 901-02.

21.     Moreover, whether or not such a disclosure has occurred, Relator would qualify as an "original source" of the information on which the allegations or transactions in this Complaint are based. Relator researched and discovered the pertinent entity information and individual information of each Defendant.

22.     This Court has personal jurisdiction over each Defendant pursuant to 31 U.S.C. § 3732(a) because that section authorizes nationwide service of process and because each Defendant is a government entity located in the Southern District of Mississippi.

23.     Venue is proper in the Southern District of Mississippi pursuant to 28 U.S.C. § 1391(b)-(c) and 31 U.S.C. § 3732(a) because each Defendant is a government entity located in the Southern District of Mississippi, and because violations of 31 U.S.C. §§ 3729 *et seq.* alleged herein occurred within this district.

---

[3] The name of the borrower on the PPP loan application for this defendant is "Warren Yazoo Behavioral Health, Inc."

5

## THE PAYCHECK PROTECTION PROGRAM

24.     Congress added sections 1102 and 1106 of the Coronavirus Aid, Relief, and Economic Security Act **("CARES Act")**. Section 1102 contained a new program called the Paycheck Protection Program **("PPP")** and was part of the U.S. Small Business Administration's **("SBA")** 7(a) Loan Program. These two sections were intended to provide economic relief to small businesses nationwide adversely impacted by the coronavirus pandemic and the COVID-19 Emergency Declaration issued by then-President Trump on March 13, 2020.

25.     Due to the COVID-19 emergency, many small businesses nationwide were experiencing economic hardship as a direct result of the Federal, State, and local public health measures that were being taken to minimize the public's exposure to the coronavirus.

26.     The SBA received funding and authority through the CARES Act to modify existing loan programs and establish the new PPP loan program to assist small businesses nationwide adversely impacted by the coronavirus pandemic.

27.     Section 1102 of the Act temporarily permitted SBA to guarantee 100% of 7(a) loans under the PPP. Section 1106 of the CARES Act provided for forgiveness of up to the full principal amount of qualifying loans guaranteed under the PPP.

28.     The CARES Act was intended to provide relief to America's small businesses expeditiously.

29.     The CARES Act gave lenders delegated authority to process loan applications for PPP funding. SBA allowed lenders to rely on certifications of the borrowers in order to determine eligibility of the borrower and use of loan proceeds, and to rely on specified documents provided by the borrower to determine qualifying loan amount, and eligibility for loan forgiveness. Lenders were held harmless for borrowers' failures to comply with PPP rules.

6

30.    Defendants submitted documentation attempting to establish eligibility such as payroll processor records, payroll tax filings, form 1099s, and income and expenses documentation.

31.    On the PPP application, a representative of Defendants had to certify in good faith to a number of representations to the Federal Government. The second bullet point under the CERTIFICATIONS AND AUTHORIZATIONS section on the PPP loan application states:

> ***The Applicant is eligible to receive a loan*** under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (the Paycheck Protection Program Rule). [Emphasis added].

32.    Another certification on the application states, "Current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant."

33.    Defendants also "further certif[ied] that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects."

34.    Finally, Defendants certified that they "underst[ood] that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000."

## ALLEGATIONS

### Government-Owned Entities Are Not Eligible to Receive PPP Loans

35.    Title I, Section 1102(a)(i)(D)(i) of the CARES Act indicates that borrowers must comply with certain eligibility requirements.

7

36.    One such eligibility requirement is found in the Code of Federal Regulations that states "government-owned entities" are ineligible to receive SBA loans, which would include PPP loans. *See*, 13 CFR 120.110(j).

## Defendants Are Government-Owned Entities

37.    The Mississippi Department of Mental Health's 2020-21 State Plan (pg. 14) indicates that Defendants are government-owned and government-controlled entities:

> *State Level Administration* of Community-Based Mental Health Services: The major responsibilities of the state are to plan and develop community mental health services, to set Operational Standards for the services it funds, and to monitor compliance with those Operational Standards. *Provision of community mental health services is accomplished by contracting to support community services provided by regional commissions* and/or by other community public or private nonprofit agencies.[4] [Emphasis added].

38.    This State Plan further describes Defendants:

> Regional Community Mental Health Centers (CMHCs): *The CMHCs operate under the supervision of regional commissions appointed by county boards of supervisors comprising their respective service areas.* The *14 CMHCs* make available a range of community-based mental health, substance use, and in some regions, intellectual/developmental disabilities services. *CMHC governing authorities are considered regional and not state-level entities*. The DMH is responsible for certifying, monitoring, and assisting CMHCs.[5]

39.    The Mississippi Legislature created Defendants, which are some of the 14 Regional Community Mental Health Centers discussed above. The following statutory provisions establish Defendants as government-owned entities.

> a.    One or more counties formed Defendants. Miss. Code Ann. § 41-19-31 ("For the purpose of authorizing the establishment of mental illness and intellectual disability facilities and services in the State of Mississippi, the boards of supervisors of one or more counties are authorized to act singularly or as a group in the selection of a regional district …").

---

[4] *See*, https://www.dmh.ms.gov/wp-content/uploads/2022/05/FY20-21-State-Plan-Final.pdf

[5] *Id*. at pg. 15; emphasis added.

8

b. County boards of supervisors appoint the supervisors of the boards overseeing Defendants. Miss. Code Ann. § 41-19-35.

c. Defendants have to submit mental illness and intellectual disability plans to the Mississippi Department of Mental Health each year, which said department approves or disapproves. Miss. Code Ann. § 41-19-39.

d. Defendants can request counties in their region to levy a tax "for the construction, operation and maintenance of those mental illness and intellectual disability facilities or services in such region." *Id.*

e. Defendants are equivalent to state mental institutions because they are eligible to treat patients "in the same manner as is provided by the laws of Mississippi for commitment to the state mental institutions." Miss. Code Ann. § 41-19-41.

40.     The Mississippi Supreme Court has also described the governmental nature of Defendants. In *United Healthcare of Mississippi Inc. v. Mississippi's Community Mental Health Commissions, et al.*, 335 So.3d 1055 (Miss. 2022), the court described Defendants as follows: "Mississippi has fourteen regional health commissions established under Mississippi Code Sections 41-19-31 and -33 (Rev. 2018). Each regional commission operates a CMHC to provide facilities and services for the prevention and treatment of mental illnesses, mental disorders, developmental and learning disabilities, alcoholism, narcotic addiction, drug dependence, and related conditions." *Id.* at 1058.

41.     The Mississippi Supreme Court, which called Defendants "public boards" (*id.* at 1062), noted Defendants' representation and argument to the Court regarding their status as public entities protected by the Mississippi Constitution: "The CMHCs further averred that any claimed arbitration provisions were unenforceable and did not deprive the trial court of jurisdiction because: a. *they violate article 4, section 100, of the Mississippi Constitution.*" *Id.* at 1059 (emphasis added).

42.     This provision of the Mississippi Constitution to which Defendants were relying on in their representations to the Mississippi Supreme Court states,

7

No obligation or liability of any person, association, or corporation *held or owned by this state, or levee board, or any county, city, or town thereof*, shall ever be remitted, released or postponed, or in any way diminished by the Legislature, nor shall such liability or obligation be extinguished except by payment thereof into the proper treasury; nor shall such liability or obligation be exchanged or transferred except upon payment of its face value; but this shall not be construed to prevent the Legislature from providing by general law for the compromise of doubtful claims. [Miss. Const. Art. 4, § 100; emphasis added].

43.      According to the foregoing state statutes, Mississippi Supreme Court case, and Mississippi Constitutional provision, Defendants are government-owned and government-controlled public entities.

**Hinds County Commission**

44.      In addition to the foregoing establishing Defendants as public entities, Hinds County Commission describes itself on its official website as "a *public entity* made up of members appointed by the Hinds County Board of Supervisors and two 'at-large' commissioners."[6] (Emphasis added).

45.      Additionally, a "Contract for Professional Services" between the Hinds County Commission and the accounting firm Lyles & Sinclair signed on May 17, 2019, and joined by the Office of the [Mississippi] State Auditor describes the Hinds County Commission as "a component unit of Hinds County."[7]

**Region XIII Commission**

46.      In addition to the above references to state statutes, a Mississippi Supreme Court case, and Mississippi Constitutional provision establishing Defendants as government entities, the Region XIII Commission's audited financial statements for the years ended September 30,

---

[6]https://hbhs9.com/about/

[7]https://www.osa.state.ms.us/documents/Transparency/2018/18cHinds%20County%20Mental%20Health%20Commission.pdf

2020, and 2019, reached the same conclusion. Said financials noted that Region XIII Commission "was formed in January 1969 as a special purpose governmental unit of the State of Mississippi."[8] These financial statements applied Government Auditing Standards (*id.* at 2) and further described Region XIII Commission as a "governmental entit[y]" (*id.* at 10) that participates in "governmental operations."[9]

47.     The financial statements further note that the Region XIII Commission's "public funds" "are protected through a collateral pool administered by the State Treasurer" (*id.* at 13) and that the "collateral is held in the name of the State Treasurer under a program established by the Mississippi State Legislature and is governed by Miss. Code Ann. (1972), 27-105-5." *Id.*

## Singing River Services

48.     In addition to the above references to state statutes, a Mississippi Supreme Court case, and Mississippi Constitutional provision establishing Defendants as government entities, the audited financial statements of Jackson County, Mississippi, for the year ended September 30, 2018, arrived at the same conclusion.[10]

49.     Said financials contain the following note:

Singing River Mental Health/Mental Retardation Services (the "Agency") is *a special purpose governmental unit of the State of Mississippi*. Legal authority is granted the Agency by Section 690957 et. seq. of the Mississippi Code of 1972. Section 41-19-31 et. seq. of the Mississippi Code of 1972 sets forth the purpose and duties of the Agency, which are to establish facilities within which to operate and maintain programs to serve the mentally ill and mentally retarded in Jackson and George counties in Mississippi.

*The Agency is a component unit of Jackson County, Mississippi* and is governed by a Board of Commissioners, composed of two members, appointed in accordance with State Law, one by the Jackson County Board of Supervisors, and

---

[8] https://projects.propublica.org/nonprofits/display_audit/9633220202, p. 10

[9] *Id.* at p. 20.

[10] https://www.osa.state.ms.us/documents/counties/2018/18cJackson%20County-cpa.pdf

one by the George County Board of Supervisors. These Commissioners are the governing authority of the Agency.[11]

50.     Driving home this point, the financials again state, "the Agency is a special purpose governmental entity created by an act of the Mississippi Legislature."[12]

51.     Employees of Singing River Services are eligible to participate in the Public Employees' Retirement System of Mississippi (PERS).[13]

52.     The 2019 Comprehensive Annual Report of Public Employees' Retirement System of Mississippi (PERS) lists Singing River Services as one of the "Public Agencies Covered by State Retirement Annuity."[14]

**Southwest Mississippi Commission**

53.     In addition to the above references to state statutes, the Mississippi Supreme Court case, and Mississippi Constitutional provision establishing Defendants as government entities, the 2019 Comprehensive Annual Report of Public Employees' Retirement System of Mississippi (PERS) lists the Southwest Mississippi Commission as one of the "Public Agencies Covered by State Retirement Annuity."[15]

**Warren Yazoo**

54.     In addition to the above references to state statutes, the Mississippi Supreme Court case, and Mississippi Constitutional provision establishing Defendants as government entities, Warren Yazoo's audited financial report for the year ended September 30, 2021, reaches

---

[11] *Id.* at p. 62; emphasis added.

[12] *Id.* at p. 68.

[13] https://www.co.jackson.ms.us/Archive/ViewFile/Item/234

[14] https://www.pers.ms.gov/Content/CAFR/2019CAFR.pdf

[15] https://www.pers.ms.gov/Content/CAFR/2019CAFR.pdf

12

the same conclusion. Said financials note that the organization's "*[g]overnmental activities* include programs supported primarily by clinical services and federal and state grants" and that it "has one business-type activity that relies on the sales of advertising novelties for support."[16]

55.    Said financial report also makes clear that Warren Yazoo is a "public entity":

The collateral for public entity deposits in financial institutions is held in the name of the State Treasurer under a program established by the Mississippi State Legislature and is governed by Section 27-105-5, Miss. Code Ann. (1972). Under this program, the entity's funds are protected through a collateral pool administered by the State Treasurer.[17]

### Defendants' PPP Loans

56.    Despite being government-owned and government-operated entities, Defendants inappropriately applied for and received sizeable PPP loans.

57.    The Hinds County Commission applied and was approved for a first-draw PPP loan on April 27, 2021 (loan number 2657168900), in the amount of $1,913,342.00, received said PPP loan, and had said PPP loan forgiven on June 28, 2022, in the amount of $1,935,358.54.

58.    The Region XIII Commission applied and was approved for a first-draw PPP loan on July 16, 2021 (loan number 4420128105), in the amount of $1,503,522.00, received said PPP loan, and had said PPP loan forgiven on March 10, 2022, in the amount of $1,528,072.66. (It is possible that prior to applying for this PPP loan on July 16, 2021, Region XII Commission had begun to wind down its operations due to financial difficulties. If so, applying for this loan while no longer being a going concern would constitute an additional basis of fraud.)

---

[16] *See*, https://projects.propublica.org/nonprofits/display_audit/9594820211, p. 19 (emphasis added).

[17] *Id.* at p. 25.

13

59.    Singing River Services applied and was approved for a first-draw PPP loan on April 7, 2020 (loan number 7060197009), in the amount of $1,122,852.50, received said PPP loan, and had said PPP loan forgiven on January 26, 2021, in the amount of $1,131,710.56.

60.    Singing River Services applied and was approved for a second-draw PPP loan on January 28, 2021 (loan number 7171318301), in the amount of $1,112,928.40, received said PPP loan, and had said PPP loan forgiven on October 25, 2021, in the amount of $1,121,058.96.

61.    Southwest Mississippi Commission applied and was approved for a first-draw PPP loan on April 30, 2020 (loan number 4979807309), in the amount of $374,567.00, received said PPP loan, and had said PPP loan forgiven on November 10, 2021, in the amount of $380,180.37.

62.    Southwest Mississippi Commission applied and was approved for a second-draw PPP loan on May 15, 2021 (loan number 2280939008), in the amount of $573,523.00, received said PPP loan, and had said PPP loan partially forgiven on August 28, 2023, in the amount of $515,260.14.

63.    Warren Yazoo applied and was approved for a first-draw PPP loan on April 12, 2020 (loan number 4093627108), in the amount of $1,342,247.50, received said PPP loan, and had said PPP loan forgiven on July 14, 2021, in the amount of $1,358,913.74.

64.    Warren Yazoo applied and was approved for a second-draw PPP loan on January 22, 2021 (loan number 4108848300), in the amount of $1,342,247.50, received said PPP loan, and had said PPP loan forgiven on May 5, 2022, in the amount of $1,359,053.17.

65.    Upon information and belief, Defendants retained their PPP funds and have not repaid them.

66.     Relator reserves the right to amend this Complaint and expand these allegations upon review of the actual applications and supporting documentation submitted by each Defendant.

## CAUSES OF ACTION

### COUNT 1
### Violations of the FCA, 31 U.S.C. § 3729(a)(1)(A) Against All Defendants
### (Submitting a False Claim for Approval)

67.     The above paragraphs are realleged and incorporated herein.

68.     The FCA imposes liability on one who knowingly presents or causes to be presented a false or fraudulent claim for payment or approval. 31 U.S.C. § 3729(a)(1)(A).

69.     Defendants knowingly presented or caused to be presented to the SBA claims for approval of PPP loan applications for which they were ineligible because they are government-owned entities.

70.     Defendants' knowing false certifications on the PPP loan applications at issue herein were material to the government's decision to approve and then forgive their PPP loans. When submitting the PPP loan applications, Defendants had to certify they were compliant with SBA's guidance and rules, that they were eligible for the loans, and that all information included on their application forms was true and accurate in all material respects.

71.     But for Defendants' submission of their false claims, they would not have received the loans.

72.     By reason of Defendants' acts, the United States has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

73.     This is a claim for treble damages and penalties under the FCA, 31 U.S.C. § 3729, *et seq*. Additionally, the United States is entitled to the maximum penalty of up to $11,000 for each and every violation arising from Defendants' unlawful conduct alleged herein.

15

<u>**COUNT 2**</u>
**Violations of the FCA, 31 U.S.C. § 3729(a)(1)(B) Against All Defendants**
**(Creating a False Record or Statement Material to a False Claim )**

74.     The above paragraphs are realleged and incorporated herein.

75.     The FCA imposes liability on one who knowingly makes, uses, or causes to be made or used a false record or statement material to a false or fraudulent claim paid or approved by the U.S. government. 31 U.S.C. § 3729(a)(1)(B).

76.     Defendants knowingly made or caused to be made false records or statements to support false claims submitted to the SBA for PPP loans.

77.     The false records and statements Defendants made were used to support false claims submitted to the U.S. government.

78.     By reason of Defendants' acts, the United States has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

79.     This is a claim for treble damages and penalties under the FCA, 31 U.S.C. § 3729, *et seq*. Additionally, the United States is entitled to the maximum penalty of up to $11,000 for each and every violation arising from Defendants' unlawful conduct alleged herein.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, *qui tam* Plaintiff/Relator prays for judgment against Defendants as follows:

1. That this Court enter judgment against Defendants in an amount equal to three times the damages the United Sates has sustained because of Defendants' actions, plus a civil penalty of not less than $5,500 and not more than $11,000 for each violation of 31 U.S.C. § 3729;

2. That Relator be awarded the maximum amount allowed pursuant to 31 U.S.C. § 3730(d);

16

3. That Relator be awarded all costs of this action, including attorney's fees and

   expenses; and

4. That Relator recover such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Relator hereby demands a

trial by jury.


Dated: 3/1/24                          Respectfully submitted,

                                      J. Bryan Quesenberry
                                      Plaintiff/Relator

17